1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GREGORY LYNN NORWOOD,

11              Plaintiff,                    No. CIV S-03-2554 GEB GGH P

12        vs.

13   EDWARD ALAMEIDA, JR., et al.,

14              Defendants.              ORDER

15   _____/

16   <u>Introduction</u>

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court is 1) plaintiff's January 27, 2006, motion to compel further

19   discovery; defendants filed an opposition, after which plaintiff filed a reply; 2) plaintiff also, by

20   motion/declaration, filed on April 17, 2006, apparently pursuant to Fed. R. Civ. P. 56(f), asks the

21   court to "postpone" or continue consideration of defendants' motion for summary judgment, filed

22   on March 23, 2006,[1] for the filing of an opposition, based on plaintiff's not yet having received

23   all of the discovery responses/production he has sought by his motion to compel.

24   \\\\\

25   _____

26   [1] Defendants filed an amended Table of Authorities in support of the summary judgment
     on March 24, 2006.

Second Amended Complaint

This action had been proceeding upon a first amended complaint, filed on April 26, 2004, against defendants Mike Knowles, S. J. Vance, J.P. Walker, T. Goughnour, M. Martel, D. Willey.[2]  Upon plaintiff's filing of a motion for leave to file a second amended complaint along with a proposed second amended complaint, on June 7, 2005, the court ordered defendants, who had previously filed an answer to the first amended complaint, to file a response, which they did in the form of a statement of non-opposition.  The court thereafter granted plaintiff leave to file the second amended complaint and directed service of process upon one additional defendant, Cheryl Pliler.  See Orders, filed on August 4, 2005, and on October 6, 2005.

Plaintiff alleges that as an inmate at California State Prison - Sacramento (CSP-Sac), he was subjected to four lockdowns, resulting in extended periods of deprivation of outdoor physical exercise in violation of his Eighth Amendment rights, causing him physical and psychological damage in the form of stress, depression, headaches and muscle cramps.  Second Amended Complaint (SAC), pp. 3-4.  Inmates, including himself, were confined to double-bunk cells 24-hours a day for seven days a week, with the exception of a five-minute shower period every other day, excluding Sundays.  SAC, p. 3.

From January 4, 2002, until November 4, 2003, black general population inmates were deprived of outdoor exercise for fourteen out of twenty-two months, even when there was no individual misconduct or showing of a propensity to escape.  SAC, p. 4.  The lockdowns occurred as a result of prison staff  having been stabbed, but impacted inmates who were uninvolved in the incidents.  SAC, pp. 4-5.

The first period of deprivation of outdoor exercise commenced on January 4, 2002, and ended on April 3, 2002, due to an alleged staff stabbing allegedly perpetrated by

_____

[2]  This case was originally filed on December 15, 2003.  Certain claims/defendants were dismissed from the original complaint with leave to amend granted by Order, filed on March 25, 2004, after which plaintiff filed his now-superseded first amended complaint.

1  Mexican (Hispanic) inmates in dining hall two.  SAC, p. 5.  During that period a memorandum

2  rescinding outdoor exercise for inmates was circulated which was signed by defendant Steve

3  Vance, B-facility captain at CSP-Sac.  Id.  Then-warden, defendant Cheryl Pliler, not only must

4  have approved the excessive outdoor exercise deprivation, but also failed to intervene to prevent

5  the deprivation of outdoor exercise for a period of approximately thirteen weeks.  Id.  The lack

6  of exercise caused plaintiff to suffer anxiety, depression, stress, headaches and muscle cramps.

7  Id.

8          The second period of deprivation at CSP-Sac B-facility occurred from May 8,

9  2002, and extended until July 31, 2002, as a result of an alleged stabbing assault upon a

10  staffmember by a lone black inmate, who attacked his work supervisor.  Memoranda were

11  circulated among inmates signed by defendant Vance and defendant Associate Warden T.

12  Goughnour, rescinding all outdoor exercise for the period set forth.  Once again defendant Pliler

13  had to have approved the excessive deprivation of all outdoor exercise and failed to intervene to

14  prevent plaintiff's resultant suffering therefrom, again for an approximate thirteen-week period.

15  SAC, p. 5.

16          The third period of outdoor exercise deprivation occurred as a result of a melee on

17  the B-facility main exercise yard, wherein member or members of the staff were allegedly

18  stabbed and extended from December 28, 2002, until June 1, 2003.  Memoranda rescinding all

19  outdoor exercise for this period were circulated among inmates and signed by defendant Vance

20  and defendant B-facility Associate Warden M. Martell.  This was for an approximate twenty-

21  week period, and defendant Pliler once again must have approved it and failed to intervene to

22  prevent the suffering plaintiff experienced in the form of headaches, stress, anxiety, depression

23  and muscle cramps.  SAC, p. 6.

24          The fourth period of deprivation of outdoor exercise, extended from September 3,

25  2003, until November 4, 2003, during which period plaintiff suffered from the conditions

26  previously set forth.  Memoranda, signed by defendant D. Willey, B-facility captain of CSP-Sac,

and B-facility Associate Warden James P. Walker, circulated rescinding all outdoor exercise for the period, due to a staff stabbing assault in CSP-Sac B-facility's housing block four. Defendant CSP-Sac Warden Steve Knowles had to approve the continued lockdown and revocation of outdoor exercise and failed to intervene to prevent plaintiff's suffering. SAC, p. 6.

Plaintiff's grievances were denied on the bases of safety and security and lack of accommodations. Id. Plaintiff avers that CSP-Sac has three facilities, A, B, and C, each containing eight individual housing units. All are designed for Level 4, 180 inmates. All cells are the same size, including doors, windows, showers and dayroom. Other than each facility's main exercise yard, each facility's individual housing unit is adjacent to a mini concrete yard, which has a manned gun tower affording a view of the entire yard. SAC, p. 7.

Administrative Segregation (Ad Seg) inmates have access to the mini concrete yard ten days after being placed in Ad Seg, regardless of the reason for such placement. Inexplicably, however, programming general population (GP) inmates are deprived of access to this yard for months at a time. SAC, p. 7. Plaintiff contends that GP inmates should have access to the mini concrete yard once a facility has been searched throughout the investigation period. Plaintiff alleges that the deprivations occurred not as a result of the four staff stabbing assaults, which he believes will be proven to be "isolated and/or spontaneous," but as a form of retaliation and punishment and not for safety, security reasons. Id.

Plaintiff contends that when administrators act on information it has received, as on three occasions when information indicated "black affiliations" in a planned assault on staff, the investigation takes from six to sixteen days, but when staff is involved (i.e., become victims) of a stabbing assault, the investigation takes months. Prison staff have been able to search the entire B-facility in a nine-to-eleven-day period when metal was missing on August 15, 2002 and the search ended on August 26, 2002, but stabbings involving staff take months of searching. SAC, p. 8. Plaintiff seeks injunctive relief and monetary damages.

\\\\\

Background

The original scheduling order in this matter was filed on May 17, 2005, wherein the discovery deadline was set for August 26, 2005.  However, subsequently, plaintiff filed a motion to be allowed to proceed upon a second amended complaint, as noted earlier.  In the August 4, 2005, order, granting plaintiff leave to proceed on the second amended complaint, the court also vacated the deadlines in the scheduling order, extending, inter alia, the discovery deadline, and deadline for filing motions to compel discovery, until October 21, 2005.  By order, filed on August 30, 2005, the parties were granted until November 21, 2005, to conduct discovery.  By order, filed on October 25, 2005, plaintiff was granted 60 days from the date the new defendant, C. Pliler, was served to file a motion to compel discovery, which applied as well to defendant Pliler's seeking discovery from plaintiff; as to the remaining defendants, the November 21, 2005, discovery cut-off still applied.  On December 1, 2005, due to an apparently hastily arranged transfer of plaintiff, wherein he averred that he was separated from his legal property, plaintiff was granted an extension of time until December 23, 2005, to file a motion to compel as to all defendants but defendant Pliler, for whom the deadline with respect to her, remained that set forth in the order, filed on October 25, 2005.  According to plaintiff, prior to the transfer from CSP-Sacramento to Calipatria State Prison, on November 7, 2005, he had been informed that he would not be transferred until the pending litigation was resolved.   The court noted in its December 1, 2005, order, that plaintiff's unopposed request to serve additional discovery, filed on June 29, 2005, was granted, by order filed on August 4, 2005, and plaintiff was allowed to propound upon defendants, pursuant to Fed. R. Civ. P. 26(b)(2), interrogatories 26 through 44 in set one and interrogatories 1 through 22 in set two, which are in excess of the 25-interrogatory limit set by Fed. R. Civ. P. 33.   By order filed on January 5, 2006, plaintiff was denied leave to serve further additional requests upon defendant Willey.

\\\\\

\\\\\

1  Motion to Compel

2          Plaintiff avers that he has raised claims under the Eighth and Fourteenth

3  Amendments.  To the extent plaintiff appears to be claiming that the extended deprivation of

4  exercise was retaliatory, he also seems to be making a First Amendment claim.  Nevertheless, the

5  gravamen of plaintiff's second amended complaint rests on his claims for violations of the Eighth

6  Amendment.  By his motion he seeks further discovery as to all defendants with respect to his

7  first set of interrogatories and requests for production of documents, except defendant Pliler; only

8  in his reply does he appear to improperly bootstrap a request for an order compelling discovery as

9  to defendant Pliler in his motion seeking further discovery as the earlier served defendants.  Any

10  request as to defendant Pliler in his reply must be denied, as not made in accordance to Fed. R.

11  Civ. P. 37(a), requiring reasonable notice to the party affected thereby.

12          As to his request for an order compelling further discovery as to defendants Mike

13  Knowles, S. J. Vance, J.P. Walker, T. Goughnour, M. Martel, D. Willey, plaintiff states that at

14  issue are his first set of interrogatories and of requests for production of documents propounded

15  as to each of them, and as to set two of the interrogatories and requests for production of

16  documents as to defendants Vance and Walker only.  Motion to Compel (MTC), p. 1.  Plaintiff

17  identifies the following of the responses to the first set of interrogatories propounded upon

18  defendants as at issue: Nos. 14 through 17, 25 through 28, 33 through 44.  As to the second set of

19  interrogatories propounded upon defendant Vance, the answers to Nos. 9 through 12 and 20

20  through 22 are at issue.  As to defendant Walker, the following from the second set of

21  interrogatories is at issue: No. 19.  In addition, plaintiff states in the caption that his request to

22  compel (further) discovery as to each of these interrogatories is "combined with a request for

23  production of documents."  However, plaintiff does not set forth specifically what requests for

24  production of documents are at issue.  To the extent that he attempts to conflate requests for

25  production of documents and other tangible items with interrogatories, his motion with respect to

26  further production will be denied.

Opposition

        Defendants move for denial of the motion on the grounds that plaintiff has failed to file his motion in compliance with Local Rule 33-250(c), the relevant part of which directs a party seeking an order with regard to discovery to file the interrogatories and answers at issue with the motion and only those at issue. As defendants point out, plaintiff did not attach the interrogatories at issue with his motion to compel, which was filed on January 27, 2006, but, instead, on February 3, 2006, separately filed 135 pages related to his discovery requests without targeting the responses he challenges in that filing. Within that voluminous filing plaintiff includes, willy-nilly, correspondence from defendants' counsel to himself, supplemental responses, and separately served verifications without focusing on the responses and the interrogatories that are in dispute. Alternatively, defendants maintain they have responded appropriately to the requests at issue, which specific arguments the court will consider where appropriate in the discussion below.

Discussion

        The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad. Discovery may be obtained as to any unprivileged matter "relevant to the claim or defense of any party...." Id. Discovery may be sought of relevant information not admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The court, however, may limit discovery if it "....is unreasonably cumulative or duplicative," or can be obtained from another source "that is more convenient, less burdensome, or less expensive"; or if the party who seeks discovery "has had ample opportunity by discovery ...to obtain the information sought"; or if the proposed discovery is overly burdensome. Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

        In his initial filing, plaintiff appears to have first set forth his efforts to resolve discovery issues, appending to those filings his motion to compel. In that appended motion, however, plaintiff did write out the specific interrogatories, and, to a limited extent, the responses to which he objects. Although he did not include the exact responses, he indicated the objections

made.  Even though plaintiff did not strictly comply with the applicable rule and plaintiff's

haphazard method of putting together his motion in parts is onerous for both defendants and the

court, the undersigned finds that plaintiff has adequately identified the interrogatories at issue

herein.

        With respect, however, to any request for production of documents, plaintiff has

failed in his motion to specifically identify any such requests; therefore, pursuant to Local Rule

34-250(c), plaintiff has failed to comply with the applicable rule which requires that "only that

part of the request for production, response, or proof of service that is in issue shall be filed."

Thus, the court will deny plaintiff's motion with respect to requests for production of documents,

to the extent he made any such motion and will proceed only to adjudicate the motion as to the

interrogatories he identified.

        First Set of Interrogatories:

> No. 1:  Throughout the January 4, 2002 lockdown at CSP-Sac B-facility until its conclusion of April 3, 2002, how many black inmates were placed in administrative segregation and/or referred to the district attorney for their involvement in the January 4, 2002 incident at CSP-Sac B facility?  After providing the written answer, would you forward the names and prison identification number to the court for an in camera hearing?  Also would you provide the CDC 115 disciplinary report?
>
> Response: Defendants object to this interrogatory on the ground that it seeks information and documents that are irrelevant to the claims and defenses in this lawsuit.  Defendants further object to the request on the ground that it is vague and uncertain as to time, and that it is overbroad and unduly burdensome.  Defendants further object on the ground that it seeks information and documents concerning other inmates that are confidential in nature.  The Department of Corrections, as custodian of prison records, has a duty to safeguard the privacy of inmates' prison files.  See Board of Trustees v. Superior Court (1981) 119 Cal. App.3d 516, 524-25.  Inmates' privacy rights are protected under the state and federal constitutions.  (Id.)

        Plaintiff argues that he seeks the information about the initial lockdown to show

that prison officials went on a fishing expedition and that no black inmates were involved in any

incident.  He also contends that the CDC 115 disciplinary report will show that the incident was

1   isolated or spontaneous and will give the name and badge number of the correctional officer, so

2   that plaintiff might be able to call him as a witness to describe how the incident transpired.

3   MTC, pp. 13-14.

4               Defendants argue that plaintiff is alleging that he was deprived of outdoor

5   exercise during various Facility B lockdowns but his interrogatory is directed to the number of

6   black inmates placed in ad seg and/or referred to the district attorney for involvement in the

7   incident leading to the January 4, 2002, lockdown.  In addition to reiterating their objections,

8   they also state that there was no basis for forwarding documents to the court for an in camera

9   hearing at the time plaintiff served his interrogatories.  Opp., p. 5.

10              In reply, plaintiff maintains that an essential part of his allegations, seeking

11  punitive damages, is that the deprivation of physical exercise was retaliatory, although he does

12  not set forth the requisite predicate for a claim of retaliation.  Reply, p. 2.

13              As the undersigned has noted before, this action proceeds primarily upon

14  plaintiff's claim for a violation of his rights under the Eighth Amendment.  To the extent that

15  plaintiff may have attempted to frame any claim for retaliation in his second amended complaint,

16  he has not adequately set it forth.  In order to state a retaliation claim, a plaintiff must plead facts

17  which suggest that retaliation for the exercise of protected conduct was the "substantial" or

18  "motivating" factor behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d

19  1310, 1314 (9th Cir. 1989); Rizzo 778 F.2d at 532.  The plaintiff must also plead facts which

20  suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory.

21  Pratt at 806 (citing Rizzo at 532).  Verbal harassment alone is insufficient to state a claim.  See

22  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, even threats of bodily

23  injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing

24  the act itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of

25  hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation

26  because of the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560,

1   562 (n.1) (10th Cir. 1990).

2          In <u>Pratt</u>, the Ninth Circuit concluded that in evaluating retaliation claims, courts

3   should defer "to prison officials in the evaluation of proffered legitimate penological reasons for

4   conduct alleged to be retaliatory."  <u>Pratt</u>, 65 F.3d at 807 (citing <u>Sandin v. Conner</u>, 515 U.S. 472,

5   115 S. Ct. 2293 (1995)).

6          In this case, plaintiff has not met the threshold requirement of setting forth any

7   constitutionally protected conduct that he exercised for which he allegedly suffered any

8   retaliation.  This action remains one proceeding under the Eighth Amendment.  The claim upon

9   which plaintiff proceeds is that he, as a general population inmate of Facility B, has been

10  subjected to repeated extended deprivations of his right to outdoor physical exercise that are

11  unconstitutional, i.e., he has been subjected to cruel and unusual punishment.  The court sees no

12  basis for requiring a further response as to this interrogatory.  Interrogatory no. 15 seeks the same

13  information with respect to the second lockdown period, from May 8, 2002, until July 31, 2002,

14  and will be denied for the same reasons.

15          No. 16: Would you provide to both plaintiff and the court a video
            tape of the December 28, 2002 melee that occurred at CSP-Sac B
16          facility's main exercise yard in which staff were allegedly
            assaulted?  Could you also provide the names of the inmates who
17          were either transferred, placed in administrative segregation or
            referred to the District Attorney for prosecution in relation to the
18          December 28, 2002 staff assault at CSP-Sac B facility?  Also
            would you provide the CDC 115 disciplinary reports?
19
            Response:  Defendants object to this interrogatory on the ground
20          that it seeks information and documents that are irrelevant to the
            claims and defenses in this lawsuit.  Defendants further object on
21          the ground that it seeks information and documents concerning
            other inmates that are confidential in nature.  The Department of
22          Corrections, as custodian of prison records, has a duty to safeguard
            the privacy of inmates' prison files.  <u>See</u> <u>Board of Trustees v.</u>
23          <u>Superior Court</u> (1981) 119 Cal. App.3d 516, 524-25.  Inmates'
            privacy rights are protected under the state and federal
24          constitutions.  (<u>Id</u>.)

25          Plaintiff avers that the videotape "is the most compelling piece of evidence which

26  demonstrates isolation and/or spontaneity."  MTC, p. 15.  He also contends that inmate

10

statements will show "isolation and/or spontaneity."   Id.  Defendants re-assert their argument

that the videotape of the December 28, 2002, melee is not relevant to plaintiff's claim of denial

of outdoor exercise, nor is it reasonably calculated to the discovery of admissible evidence

related to the claim or to the defenses in this action.  Opp., p. 6.  In his reply, plaintiff argues that

the court can protect inmates' privacy, that inmates being prosecuted for their roles in assaults do

not have privacy rights, that plaintiff is alleging that the deprivation period was a means of

retaliation.

         Once again, however, the court must agree with defendants that retaliation is *not*

the basis of plaintiff's allegations as set forth in the second amended complaint, but the

deprivation of outdoor exercise constitutes the basis of his complaint.  Defendants are correct

that a videotape of the actual incident that precipitated the December 28, 2002, lockdown is not

reasonably calculated to the discovery of admissible evidence related to plaintiff's claim.  The

motion as to this request will be denied.  In Interrogatory No. 17, plaintiff seeks the same

information with respect to any involvement in the incident giving rise to the fourth lockdown

period by any black inmate and the motion as to this request will be denied for the same reasons

articulated for the denial of plaintiff's motion as to responses to Interrogatories no. 14 and no 15.

         In Interrogatory No. 25, plaintiff asks if defendant Vance contends that

information provided by informants prolonged the period of deprivation of outdoor exercise from

January 4, 2002-April 3, 2002, and if so, seeks the names and identification numbers of any such

informants to the court, along with any procedure used to determine the reliability of the

information.  Defendants object on the grounds of irrelevance and on the basis of confidentiality

and privilege.

         In his motion, plaintiff states that he does not need the names of any informant but

seeks any information provided by an informant and the basis for determining the reliability of

the information.  MTC, p. 16.  He objects also to defendants' failure to even respond by

indicating that an informant did or did not provide information.  In their response to this request,

defendants indicate that upon further review that plaintiff by this request was seeking potentially

relevant information and thus supplemented their response.  However, by their supplemental

response, defendants do not supplement the response to the interrogatory that plaintiff has

identified as no. 25 in his motion, but rather supplement the interrogatory plaintiff has numbered

as 26 in his motion.[3]  Therefore, although defendants have represented that the interrogatory

concerning the January 4, 2002 - April 3, 2002 lockdown period has been supplemented but have

apparently failed to do so, they will be directed to do so in the manner that they have

supplemented Nos. 26 through 28.

> No. 26: Do defendants S.J. Vance and T. Goughnour contend that
> it was information from informants that prolonged the outdoors
> exercise period [sic] throughout the May 8, 2002 - July 13, 2002
> lockdown?  If so, would you provide their names and identification
> number to the court along with the necessary screening procedure
> that was employed in order to deem the informants reliable, along
> with the information the informant provided?

Initially, defendants objected to this interrogatory because plaintiff had exceeded

the permissible number of interrogatories under Fed. R. Civ. P. 33(a).  However, as noted earlier,

the court granted plaintiff leave to serve additional interrogatories in an unopposed request.

> Supplemental Response (by defendants Vance & Goughnour):
> Defendant objects to this interrogatory on the grounds that it is
> vague and ambiguous [sic] what plaintiff defines as "prolonged,"
> and seeks confidential information about other inmates which if
> disclosed may place those inmates at risk of harm and threaten the
> safety and security of the institution.  Therefore, to the extent
> plaintiff seeks the names or identities of any confidential
> informants, that information will not be provided.
>
> Notwithstanding these objections, on May 8, 2002, an inmate in B
> facility brutally attacked an officer with a weapon.  As a result of
> the attack, the facility was placed on lock-down status pending an
> investigation into the attack.  A thorough investigation must be
> completed before un-locking the facility.  The investigation
> includes, staff, witness, and inmate interviews, a search of the
> grounds for additional weapons, and completion of relevant

---

[3] Apparently there is some confusion in the numbering because plaintiff apparently numbered two different interrogatories as no. 11, after which defendants noted the actual number and plaintiff's numbering side by side.

reports.  While confidential information may have been provided
or uncovered during the course of the investigation, the duration of
the lock-down is based on how long it took to complete the
investigation and reach the determination that it is safe to un-lock.

Furthermore, the two month lockdown can hardly be referred to as
a "prolonged" [sic] given the nature and severity of the incident.
While every lock-down is different and the durations may vary,
prior to unlocking a facility, the investigation must be complete
and staff must be satisfied that it is safe to unlock the facility.

Plaintiff posits his dissatisfaction with this response to Interrogatory No. 26  in his

reply as well as to the response to No. 25 and supplemental responses to Nos. 27 and 28.

No. 27: Do defendants S.J. Vance and M. Martel contend that it
was information provided by informants that the deprivation period
of outdoor exercise from December 28, 2002 - June 1, 2003?  If so,
would you provide the names and prison identification number to
the court along with the necessary screening procedure that was
employed in order to deem the informants reliable, along with the
information the informants provided?

Supplemental Response (by defendants Vance & Martel):
Defendant objects to this interrogatory on the grounds that it is
vague and ambiguous [sic] what plaintiff defines as "prolonged,"
and seeks confidential information about other inmates which if
disclosed may place those inmates at risk of harm and threaten the
safety and security of the institution.  Therefore, to the extent
plaintiff seeks the names or identities of any confidential
informants, that information will not be provided.

Notwithstanding these objections, on December 28, 2002,
Correctional Sergeant Murphy was brutally attacked by a large
number of black inmates while on the B facility main exercise
yard.  While responding to the vicinity where Sergeant Murphy
was being assaulted, Sergeant Graham was also rushed by three
inmates who then proceeded to brutally assault him as well.
Responding staff was also attacked by various other inmates while
attempting to calm down the incident and stop the attacks on the
[sic] Sergeant Murphy and Sergeant Graham.  A total of six
inmate-manufactured weapons were recovered during the incident.

As a result of the attacks, the facility was placed on lock-down
status pending an investigation into the attack.  A thorough
investigation includes staff, witness, and inmate interviews, a
search of the grounds for additional weapons, and completion of
the relevant reports.  While confidential information may have
been provided, the duration of the lock-down was based on the
amount of time it took to complete the investigation.

13

While every lock-down is different and the durations may vary, prior to unlocking the facility, the investigation must be complete and staff must be satisfied that it is safe to unlock the facility.

No. 28: Do defendants D. Willey and J.P. Walker contend that it was information provided by informants that prolonged the outdoors exercise period [sic] throughout the September 3, 2003 - November 4, 2003 lockdown?  If so, would you provide names and identification number to the court along with the necessary screening procedure that was employed in order to deem the informants reliable, along with the information the informants provided?

Supplemental Response (by defendant Walker): Defendant objects to this interrogatory on the grounds that it is vague and ambiguous [sic] what plaintiff defines as "prolonged," and seeks confidential information about other inmates which if disclosed may place those inmates at risk of harm and threaten the safety and security of the institution.  Therefore, to the extent plaintiff seeks the names or identities of any confidential informants, that information will not be provided.

Notwithstanding these objections, on September 3, 2003, an inmate in B Facility brutally attacked and slashed an officer with a weapon.  As a result of the attack, the facility was placed on lock-down status pending an investigation into the attack.  A thorough investigation must be completed before unlocking the facility.  The investigation includes staff, witness, and inmate interviews, a search of the grounds for additional weapons, and completion of relevant reports.  While confidential information may be provided by inmates, the duration of the lock-down is based on the duration of the investigation.

 The two month lockdown can hardly be referred to as a "prolonged" [sic] given the nature and severity of the incident.  While every lock-down is different and the durations may vary, prior to unlocking a facility, the investigation must be complete and staff must be satisfied that it is safe to unlock the facility.

Plaintiff repeatedly attempts to shore up a claim of retaliation, upon which this action does not proceed.  A passing reference in his second amended complaint alleging that certain conduct is punitive or retaliatory actions wherein the  focus of the allegations is that plaintiff has been unconstitutionally deprived of outdoor physical exercise does not constitute a claim of retaliation, as previously explained.  The court will not order further responses to these interrogatories.

14

1         As to Interrogatory Nos. 33-44, each seeks information as to each defendant with

2   respect to whether or not any of them have been accused of misconduct by staff or inmates,

3   whether any reprimands have been received or whether any defendant has ever been placed on

4   probation.  None of plaintiff's inquiries are reasonably calculated to lead to the discovery of

5   admissible evidence as to his Eighth Amendment claim and will be denied.

6         Plaintiff's motion with respect to Interrogatory Nos. 9, 10 and 11 of the second set

7   of Interrogatories directed to defendant Vance seek information to show that cell searches

8   conducted for staff assaults take longer than those conducted for any other reason.  MTC, pp. 19-

9   20.  Defendant Vance indicates his intent to supplement his responses to the extent that specific

10  information becomes available as to Interrogatory Nos. 9, 10 and 11 with regard to when the first

11  cell search and last cell search occurred in Facility  B, during the lockdown periods following the

12  the incidents on January 4, 2002, May 8, 2002, and December 28, 2002.  Opp., pp. 8-9.  In any

13  event, it appears that plaintiff seeks information regarding the number or length of time of cell

14  searches in an apparent effort to show that such searches are based on a retaliatory motive.  The

15  motion as to these requests will be denied.  Equally irrelevant to the claim upon which this action

16  proceeds is plaintiff's Interrogatory No. 12, seeking information as to the length of time taken to

17  conduct a search in B Facility for missing metal on August 12, 2004, or for weaponry on January

18  3, 2005, and on October 12, 2004.

19        As to Interrogatories 20-22, defendant Vance, after interposing objections,

20  provided a substantive response to plaintiff's questions as to whether the alleged perpetrators

21  were being prosecuted in state court for the January 4, 2002, May 8, 2002, and December 28,

22  2002, staff stabbing assaults.  Plaintiff's motion as to these requests will be denied.

23        In Interrogatory No. 19, in the second set of interrogatories directed to defendant

24  Walker, plaintiff asks the defendant what a mini-concrete yard is used for.  He also asks

25  defendant to produce photographs of the B Facility mini-concrete yards at CSP-Sac.  In response,

26  defendant Walker, after interposing objections states: "mini yards have been used when

necessary to provide certain inmates with an area to exercise when the inmate's presence on the mainline could pose a threat to the safety or security of the inmate, other inmates, or staff.  The mini concrete yards are too small to accommodate a yard program with large numbers of inmates."  Defendant has responded to plaintiff's question.  It is inappropriate to ask defendant to produce photographs as part of an interrogatory, or to combine a request for production of documents with an interrogatory.  Moreover, defendant, inter alia, objects to plaintiff's request that defendant take photos for plaintiff, a responsibility plaintiff cannot properly place on him.  The motion as to this request will be denied.

Motion to Continue Consideration of Summary Judgment Motion

In his motion/declaration filed, evidently made pursuant to Fed. R. Civ. P. 56(f), plaintiff asks the court to "postpone" or continue consideration of defendants' motion for summary judgment, filed on March 23, 2006, so that he may have time to file an opposition, based on his not yet having received all of the discovery responses/production he has sought by his motion to compel.  Notwithstanding the request for postponement of consideration of defendants' dispositive motion, plaintiff having been previously granted an extension of time to file his opposition to the summary judgment motion, proceeded to file an opposition, on May 12, 2006, of more than 680 pages, absurdly excessive and burdensome upon the court even in light of the fact that he includes in it such superfluous material as a copy of the dispositive motion itself.  Nevertheless, because the court has directed defendant Vance to provide the supplemented response to Interrogatory No. 25, of the first set of interrogatories, the court will allow plaintiff to file a supplemental opposition, should he choose to do, as set forth below.

Accordingly, IT IS ORDERED that:

1.  Plaintiff's January 27, 2006, motion to compel further responses and production of documents is denied as not made in compliance with Local Rule 34-250(c).

2.  Plaintiff's request for discovery responses made with respect to defendant Pliler, raised only in the reply, is denied as made without adequate notice to defendants, thus

16

failing to comply with Fed. R. Civ. P. 37(a).

    3.  Plaintiff's January 27, 2006, motion to compel further discovery with respect to defendant Vance's answer to plaintiff's Interrogatory No. 25 in the first set of interrogatories, the question concerning the January 4, 2002-April 3, 2002, lockdown period, which defendant Vance indicates has been supplemented but does not appear to have been, is granted to the extent that defendants have provided supplemented responses to interrogatories regarding the other lockdown periods, and the supplemented response must be served upon plaintiff within 15 days, along with a filing in this court indicating the supplemented response has been served.

    4.  As to plaintiff's January 27, 2006, motion to compel further discovery with respect the remaining interrogatories propounded upon defendants Mike Knowles, S. J. Vance, J.P. Walker, T. Goughnour, M. Martel, D. Willey, the motion is denied.

    5.  Plaintiff's January 27, 2006, motion to compel further discovery with respect to defendants' answers to his second set of interrogatories propounded upon defendants Vance and Walker is denied.

    6.  Plaintiff's motion, filed on April 17, 2006, pursuant to Fed. R. Civ. P. 56(f), for consideration of defendants' motion for summary judgment, filed on March 23, 2006, to be continued is granted only to the extent that plaintiff will be allowed, should he choose to do so, to file a supplemental opposition to the dispositive motion within 30 days of service upon him of defendant Vance's supplemented response to Interrogatory No. 25 of the first set of interrogatories.

DATED: 9/20/06       /s/ Gregory G. Hollows

                _____
                GREGORY G. HOLLOWS
                UNITED STATES MAGISTRATE JUDGE

GGH:009
norw2554.mtc

17