1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  ALVIN GITTISRIBOONGUL
   Supervising Deputy Attorney General
5  JAMES M. SOBOLEWSKI, State Bar No. 99559
   Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 327-6758
8    Fax: (916) 324-5205
     Email: James.Sobolewski@doj.ca.gov
9

10 Attorneys for Defendants Martel, Willey, Knowles,
   Goughnour, Walker, Vance, and Pliler
11

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE EASTERN DISTRICT OF CALIFORNIA

14                     SACRAMENTO DIVISION

15

16 **GREGORY LYNN NORWOOD,**                 2:03-cv-2554 GEB GGH P

17                              Plaintiff,   **DEFENDANTS' TRIAL BRIEF**

18          **v.**                           Trial Date:    October 30, 2007
                                             Time:          9:00 a.m.
19 **EDWARD ALAMEIDA, JR., et al.,**         Courtroom:     No. 10 – 13th Floor
                                             Judge:         The Honorable
20                            Defendants.                    Garland E. Burrell, Jr.

21

22         Defendants Martel, Willey, Knowles, Goughnour, Walker, Vance, and Pliler submit

23 the following Trial Brief for the assistance of the court in this matter.

24                          **FACTUAL SUMMARY**

25         Plaintiff Gregory Norwood is an inmate in the custody of the California Department of

26 Rehabilitation.  He is serving a life sentence without the possibility of parole.  Mr. Norwood was

27 incarcerated at California State Prison-Sacramento (CSP-SAC) from June 1995 to November

28 2005.

1    In 2002 and 2003, Mr. Norwood was housed in the B Facility at CSP-SAC.  B Facility

2 is a self-contained facility that houses Level-IV prisoners, that is prisoners who present the

3 greatest threat to institutional security and the safety of inmates and staff.  B Facility consists of 8

4 building or blocks, which open onto a yard.  Each building contains 64 cells with 128 beds.  The

5 total maximum population of B Facility is 1,024 inmates.  B Facility traditionally housed inmates

6 who refused to program and consistently got into trouble.   The inmate population of B Facility

7 included all races and ethnic groups.

8    The subject of the present action is lockdowns that were ordered as a result of four

9 serious assaults on staff in B Facility in 2002 and 2003.  The lockdowns effected all inmates in B

10 Facility including the Plaintiff.

11    Lockdowns are normally recommended by the facility captain and approved by the

12 warden.  During the lockdown, all normal programs are canceled and inmates are confined to

13 their cells.  Medical and psychiatric services are available to the inmates.  The lockdown allows

14 prison staff the ability to investigate the assault and the events that triggered it under secure

15 conditions, prevent further incidents, remove and isolate inmates responsible for the attacks, and

16 diffuse tensions under controlled circumstances.  Thereafter, steps are taken to gradually unlock

17 the prison and resume normal programming.   The investigation is wide-ranging and time

18 consuming, and weekly or more frequent meetings are held by senior management staff to

19 discuss the status of the investigation and consider the unlock process based on the facility

20 security concerns.

21    The four lockdowns that are the subject of the present case occurred during the

22 following periods[1]:

23    First Lockdown           January 4, 2002, to March 27, 2002;

24    Second Lockdown          May 8, 2002, to July 31, 2002;

25    Third Lockdown           December 28, 2002, to May 15, 2003; and

26    Fourth Lockdown          September 3, 2003, to November 4, 2003.

27  _____

28    1. The lockdown dates set forth are those dates that Mr. Norwood was in lockdown, and may
be shorter than the total lockdown period in B Facility.

1         The unlock process consists of returning the facility to normal programming.  The

2    process is accomplished incrementally by releasing small numbers of inmates and observing the

3    response.  Generally, critical workers are released first.  Thereafter, non-involved races are

4    released, followed by non-involved groups (gang affiliations.)  Privileges are restored

5    incrementally as inmates are released and return to work assignments.  The gradual release of

6    inmates provides staff with an opportunity to observe their conduct in a controlled setting and

7    make judgments regarding institutional safety and security and the continued progress of the

8    unlock efforts.  When serious incidents occur during the unlock process, it sometimes becomes

9    necessary to return those inmates already released to lockdown until further investigations can be

10   completed.  Senior management at CSP-SAC followed these procedures to unlock B Facility

11   after each lockdown.

12        Mr. Norwood has sued Defendants Martel, Willey, Knowles, Goughnour, Walker,

13   Vance, and Pliler.  Mr. Norwood has alleged that the Defendants violated his Eighth Amendment

14   right against cruel and unusual punishment by depriving him of outdoor exercise opportunities

15   when they imposed these lockdowns.  The Defendants involved in each lockdown are:

16        First Lockdown     C. Pliler, Warden;

17        T. Goughnour, Associate Warden – B Facility;

18        S. Vance, B Facility Captain;

19        Second Lockdown     T. Goughnour, Associate Warden – B Facility;

20        S. Vance, B Facility Captain;

21        Third Lockdown     C. Pliler, Warden;

22        M. Martel, Associate Warden – B Facility;

23        S. Vance, B Facility Captain;

24        D. Willey, B Facility Captain (Acting);

25        Fourth Lockdown     M. Knowles, Warden (Acting);

26        J. Walker, Associate Warden – B Facility (Acting); and

27        D. Willey, B Facility Captain (Acting).

28        Mr. Norwood is requesting compensatory and punitive damages for each lockdown.

# SUMMARY OF THE LAW

**A.   The law controlling Norwood's Eighth Amendment claim requires him to prove that the deprivation of outdoor exercise was sufficiently serious and that it resulted from Defendants' deliberate indifference.**

The Eighth Amendment prohibits prison officials from denying prisoners the basic necessities of life without any penological justification. *Rhodes v. Chapman*, 542 U.S. 337, 347 (1981). A prisoner who complains of conditions of confinement that are not part of the formal penalty imposed for a crime must show (1) a sufficiently serious deprivation and (2) that defendants acted with a sufficiently culpable state of mind, that is were deliberately indifferent in their actions. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

The deprivation of exercise can amount to an objectively serious deprivation that would violate the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1089-90 (9th Cir. 1996). A prisoner's right to outdoor exercise, however, is not absolute. Such exercise must be provided "unless inclement weather, unusual circumstances, or disciplinary needs made that impossible." *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979).

If the deprivation is serious enough to implicate the Eighth Amendment, plaintiff must prove that defendants were deliberately indifferent to the need for exercise, meaning that they knew of the deprivation, yet failed to take reasonable measures to satisfy the need or correct the condition. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In considering deliberate indifference, the jury must also consider that defendants had a competing obligation under the Eighth Amendment to ensure the safety of prisoners, including protecting prisoners from each other. *Id.* at 833.

Where there has been a particularized security risk, courts, including the Ninth Circuit, have permitted long-term denials of exercise. *See, e.g., LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993) (finding no Eighth Amendment violation where prisoner denied out-of-cell exercise for 5 years because inmate posed constant threat of attack); *Rodgers v. Jabe*, 43 F.3d 1082, 1088 (6th Cir. 1995) (holding that unconstitutionality of using exercise restriction as punitive sanction for prisoner's misconduct not clearly established); *Davenport v. DeRobertis*, 844 F.2d 1310, 1315 (7th Cir. 1988) ("The exception for fractious inmates protects the

1   defendant's legitimate interest in security").

2        Finally, prison officials are entitled to deference in their adoption and execution of

3   policies and practices that in their judgment are needed to preserve discipline and to maintain

4   internal security in a prison. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

5   **B.   Norwood's references to regulations relating to Disciplinary Detention and Administrative Segregation in Title 15 of the California Code of Regulations**

6   **is misplaced and irrelevant.**

7        "'Relevant evidence' means evidence having any tendency to make the existence of

8   any fact that is of consequence to the determination of the action more probable or less probable

9   than it would be without the evidence." Fed. R. Evid. 401.  Evidence should be excluded when it

10   lacks relevance.  Fed. R. Civ. P. 402.  Evidence may also be excluded when its probative value is

11   substantially outweighed by the danger of unfair prejudice, confusion, or needless delay.  Fed. R.

12   Evid. 403.

13        Mr. Norwood has referenced sections of Title 15 of the California Code of regulation

14   relating to Disciplinary Detention (Cal. Code Regs. tit. 15, §§ 3330 et seq.) and Administrative

15   Segregation (Cal. Code Regs. tit. 15, §§ 3335 et seq.)  These regulations set forth requirement

16   relating to prisoners who are removed from general population and place in detention or

17   administrative segregation.  Mr. Norwood seeks to use these sections and suggest that they apply

18   to lockdown situations.  This suggestion is incorrect.

19        A lockdown occurs when institutional safety and security concerns require a lockdown

20   of the general population.  Mr. Norwood complains of the loss of opportunity to exercise during

21   these lockdowns in violation of his Eighth Amendment rights.  The controlling case law states

22   that such lockdowns with the resulting loss of opportunity to exercise are permitted under

23   circumstances of "inclement weather, unusual circumstances, or disciplinary needs."  *Spain v.*

24   *Procunier*, 600 F.2d at 199.  The issue in this case is therefore whether or not unusual

25   circumstances or disciplinary needs continued during the lockdown to justify the loss of

26   opportunity to exercise.  Reference to regulations relating to disciplinary detention or

27   administrative segregation are irrelevant for this consideration, as are testimony and argument

28   regarding these regulations.

1

**CONCLUSION**

2

When the applicable law is applied to the facts of this case, Defendants are confident that

3

the only reasonable decision will be for judgment in their favor.

4

Dated:  October 23, 2007

5

Respectfully submitted,

6

EDMUND G. BROWN JR.
Attorney General of the State of California

7

DAVID S. CHANEY
Chief Assistant Attorney General

8

FRANCES T. GRUNDER
Senior Assistant Attorney General

9

ALVIN GITTISRIBOONGUL
Supervising Deputy Attorney General

10

11

*/s/ James M. Sobolewski*

12

13

JAMES M. SOBOLEWSKI
Deputy Attorney General
Attorneys for Defendants

14

15

16    30346199.wpd
      SF2004401398

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:     **Gregory Lynn Norwood v. Edward Alameida, Jr., et al.**

No.:     **2:03-cv-2554 GEB GGH P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 23, 2007, I served the attached **DEFENDANTS' TRIAL BRIEF** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Gregory Lynn Norwood
J-53407
California Substance Abuse Treatment
Facility
C1-103
P. O. Box 5244
Corcoran, CA 93212
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 23, 2007, at Sacramento, California.

| | |
|---|---|
| S. Burke | */s/ S. Burke* |
| Declarant | Signature |

30346910.wpd